# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALAN MURRAY,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:16-cv-01536-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 17) |

## I.

## INTRODUCTION

Plaintiff Michael Alan Murray ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from status post left shoulder arthroscopy for impingement of rotator cuff pathology with full range of motion, bipolar disorder, antisocial personality disorder, anxiety disorder not otherwise specified with mixed anxiety and depressive symptoms. For the reasons

---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 11, 12.)

1

set forth below, Plaintiff's Social Security appeal shall be granted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on December 31, 2012. (AR 60; 157-165.) Plaintiff's application was initially denied on May 10, 2013, and denied upon reconsideration on November 25, 2013. (AR 87-91, 97-101.) Plaintiff requested and received a hearing before Administrative Law Judge Andrew Verne ("the ALJ"). Plaintiff appeared for a hearing on April 15, 2015. (AR 26-59.) On July 13, 2015, the ALJ found that Plaintiff was not disabled. (AR 7-21.) The Appeals Council denied Plaintiff's request for review on August 11, 2016. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff appeared with counsel and testified at a hearing on April 15, 2015. (AR 31-53.) Plaintiff was born on May 13, 1981. (AR 31.) He is 6 feet tall and weighs 185 pounds. (AR 31-32.) Plaintiff is left handed. (AR 32.) Plaintiff was married and has three children ages 13, 9, and 3. (AR 32.) His children live with their mother, and Plaintiff has been living with his grandparents and his mother for about a year. (AR 32.) Plaintiff worked part time for a while. (AR 32.) He was homeless, living in the streets, and he had no choice. (AR 32.) Plaintiff does not receive any public assistance because he is an ex-drug offender. (AR 33.)

Plaintiff does not have a driver's license because he was unable to pass the test although he tried about six times. (AR 33.) He is not interested so he cannot remember the information. (AR 33-34.) Plaintiff gets around by riding his bicycle. (AR 34.) Plaintiff is able to read and write. (AR 34.)

Plaintiff completed the eleventh grade, but only received enough credits for the ninth grade. (AR 35.) Plaintiff was in special education classes and had anger problems, problems getting along with people, and problems concentrating. (AR 35.)

Plaintiff has spent about 10 of the last 15 years in jail. (AR 34.) His family picked him up off the streets and is helping him. (AR 34.) Plaintiff has never worked longer than six months at a job in his life. (AR 35.) He cannot hold a job and went to prison for hurting

2

someone at work. (AR 35.) Plaintiff was working on a production line and then got a promotion to a peanut brittle cook at Blue Creek Foods in 2002. (AR 37.) He worked there for 30 days. (AR 37.) He was doing a good job but he thought people were messing with him. (AR 38.) Plaintiff thought they were urinating in his water and lunch so he whacked them in the head and went to prison. (AR 35.) Plaintiff went to a substance abuse program in prison. (AR 35.) He was kicked out three times. (AR 35.) He went into the hole and they did not want to give up on him so they put him back in the program. (AR 35-36.) He was paroled and received a certificate. (AR 36.) Plaintiff worked in the print shop for a while. (AR 36.) They wanted him to get his GED but he was fighting and doing stuff in prison so he could not get it. (AR 36.)

Plaintiff also worked in 2004 and 2005 for As Is Insurance and Salvage Services of America doing insurance claims repos. (AR 38.) He was working in the warehouse and customer service for a bit, but then he went to prison. (AR 38.) They eventually went out of business. (AR 38.) Plaintiff lied on his application stating that he had a diploma and a bunch of stuff so they would hire him. (AR 39.) On his birthday, Plaintiff got a DUI and went to prison. (AR 39.) He got drunk; there was a high speed chase and a wreck. (AR 39.)

Plaintiff is unable to work because he is schizophrenic, thinks people want to harm him, and has ear problems. (AR 40.) Plaintiff has been seeing Dr. Garcia since he was released from prison in 2010. (AR 41.) He also sees Dr. King at the same office. (AR 41-42.) Plaintiff sees Dr. Vanek for his shoulder. (AR 42.) He has torn ligaments and structural damage because the police beat him up. (AR 42.) Plaintiff also has problems with his legs and his toes are numb. (AR 42.) He was stabbed eight times while he was in prison. (AR 42.)

Plaintiff was just in the hospital due to his heart racing. (AR 45.) He stayed overnight and they said it was from his mental health condition. (AR 45.)

Plaintiff's shoulder is worse on the left side. (AR 49.) Plaintiff had surgery on April 28, 2014, but it was bad the whole time he was in prison, about two and a half years. (AR 49.) His shoulder is worse since his surgery. (AR 50.) His right shoulder is also worse and he has not had surgery on it. (AR 50.) He fired his specialist and he has not seen another specialist yet. (AR 50.) It hurts Plaintiff to reach above his shoulders. (AR 50.) Anything that Plaintiff does

with his arms hurts, even gripping. (AR 51.) The physical therapist said that his grip on the left was 60 to 65 percent compared to 110 on the right. (AR 51.) Everything Plaintiff does causes him to have pain. (AR 51.) If Plaintiff reaches out in front of him his shoulder will pop and he has pain. (AR 51.) Reaching above his head is worse than reaching in front of himself. (AR 52.)

A vocational expert ("VE") Jose L. Chaparro also testified at the hearing. (AR 54-58.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since the application date of December 31, 2012.
- Plaintiff has the following severe impairments: bipolar disorder, antisocial personality disorder, anxiety disorder not otherwise specified with mixed anxiety and depressive symptoms.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a full range of work at all exertion levels but with the following nonexertional limitations: Plaintiff is capable of performing simple, repetitive tasks and is able to have occasional contact with the public, coworkers, and supervisors.
- Plaintiff has no past relevant work.
- Plaintiff was born on May 13, 1981, and was 31 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue because the claimant does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

1 - Plaintiff has not been under a disability, as defined in the Social Security Act, since the date the application was filed, December 31, 2012.

(AR 12-21.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff contends that the ALJ erred at step 2 by finding that his left shoulder impairment was not severe. Defendant counters that the ALJ properly evaluated the medical evidence and found no impairment.

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.' " Smolen, 80 F.3d at 1290 (citations omitted). Step two is a "de minimis screening devise to dispose of groundless claims." Id., 80 F.3d at 1290. An ALJ can only find that claimant's impairments or combination of impairments are not severe when his conclusion is clearly established by medical evidence. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. 85-28). In considering an impairment or combination of impairments, the ALJ must consider the claimant's subjective symptoms in determining their severity.

Smolen, 80 F.3d at 1290.

Symptoms are not medically determinable physical impairments and cannot by themselves establish the existence of an impairment. Titles II & Xvi: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations, SSR 96-4P (S.S.A. July 2, 1996). In order to find a claimant disabled, there must be medical signs and laboratory findings demonstrating the existence of a medically determinable ailment. Id. "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings. . . . In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process." Id.

At step 2, the ALJ found that Plaintiff's alleged status post left shoulder arthroscopy for impingement of rotator cuff pathology with full range of motion was not a severe impairment because there was no evidence that the condition had more than a minimal effect on Plaintiff's ability to work. (AR 12.) The record did not contain evidence of functional limitations resulting from the condition and Plaintiff has not required any significant treatment. (AR 12.)

Defendant argues that the ALJ noted that Plaintiff was stable and well controlled with his medication and that he was not always compliant with his medication. However, these findings were made in the context of Plaintiff's mental health assessment. The only reason provided by the ALJ to find that Plaintiff's shoulder impairment was not severe was because it did not meet the durational requirement.

Further, as discussed more fully below, Plaintiff presented evidence that after he injured his shoulder he had surgery to repair a labrum tear in his shoulder; following surgery he continued to complain of pain; there were objective findings of decreased range of motion and tenderness; and a subsequent MRI indicated labrum tears in the shoulder. The ALJ erred by finding that Plaintiff's left shoulder impairment was not severe. However, any such error would be harmless if the ALJ appropriately considered Plaintiff's shoulder impairment in determining

his residual functional capacity at step 4. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (any error considering impairment severe at step 2 is harmless where the ALJ considered the limitations imposed by the impairment in determining the claimant's residual functional capacity).

In determining Plaintiff's residual functional capacity, the ALJ considered that Plaintiff reported left shoulder pain aggravated by lifting. (AR 15.) The medical record noted decreased range of motion. (AR 15.) A left shoulder x-ray in August 2013 was normal. (AR 15.) Dr. Vanek noted on September 10, 2013, that Plaintiff had left shoulder impingement status post fall with possible rotator cuff pathology. (AR 15.) In February 2015, Plaintiff underwent a left shoulder arthroscopy and had full range of motion with pain. (AR 15.)

An MRI of the left shoulder in April 2015 revealed mild impingement with degenerative changes of the acromioclavicular joint, otherwise essentially negative. (AR 15.) Left shoulder MRI revealed biceps tenosynovitis, changes of impingement and deformed anterior labrum with minimal posterior labrum tear, not lasting 12 months. (AR 15.) Pursuant to the regulations an impairment is disabling if it can be expected to last for a continuous period of not less than 12 months. (AR 15.)

Plaintiff concedes that at the time he was examined by Dr. Yusufzie on June 29, 2010, he had no physical impairments. (Opening Brief 8, ECF No. 16.) Further, Plaintiff concedes that even during the initial and reconsideration phase of the process he had no physical impairments. (Id.) Plaintiff alleges that on August 5, 2013, he fell on his left shoulder. (Id. at 17.) Although the record indicates that Plaintiff was working following his surgery (329, 390), the ALJ's based his opinion on the medical evidence and found that Plaintiff had not met the duration requirement for his shoulder impairment. Accordingly, the Court examines the record after August 5, 2013, in considering whether the ALJ erred in finding that Plaintiff had not shown that his left shoulder impairment would be expected to last a continuous period of not less than 12 months.

Plaintiff injured his shoulder on August 5, 2013. (AR 315.) The record notes that Plaintiff's range of motion was deceased and he was having pain lifting his arm above his

shoulder and popping. (AR 321.) An October 24, 2013 MRI of his left shoulder indicated that Plaintiff had a labrum tear. (AR 344.) By November 2013, Plaintiff had decreased range of motion and popping in his shoulder secondary to the labrum tear. (AR 335.)

On January 21, 2014, Plaintiff's range of motion is described as significantly limited and he underwent surgery for his left shoulder impingement on January 29, 2014. (AR 334, 337-341.)

Following his surgery, Plaintiff did report increased range of motion and no or minimal pain for the next few months. (AR 332, 333.) However, as Plaintiff increased his activity he experienced increased pain and difficulty lifting at all levels due to the pain. (AR 337, 403.) In May 2014, Plaintiff was noted to have pain lifting above the shoulder with popping, normal grip strength, decreased range of motion, and shoulder tenderness. (AR 337.) On May 23, 2014, Plaintiff reported difficulties lifting at all levels due to pain, and was found to have poor scapular-humeral mechanics when he moved his arm in abduction indicating muscle trigger points and weakness. (AR 403.)

In June 2014, Plaintiff had increased range of motion but was continuing to complain of pain and examination revealed tenderness in all quadrants of the left deltoid muscle and AC joint. (AR 331.)

By August 2014, Plaintiff was reporting popping of his shoulder when it reached 90 degrees, although he was found to have maintained his range of motion. (AR 330.) Plaintiff's shoulder was tender to palpation. (AR 330.) Plaintiff reported that he had increased pain as he was increasing his activity but that his medication was keeping him at ease so that he was able to tolerate his every day activities and work. (AR 329.) Examination revealed full range of motion but tenderness to palpation in all quadrants of his left shoulder. (AR 329.) Plaintiff received an injection. (AR 329.)

On February 2, 2015, Plaintiff reported left shoulder pain that radiated to his neck, was sharp, and was aggravated by lifting. (AR 382.) Plaintiff reported that his pain was worse after he had been arrested and handcuffed. (AR 382.) Plaintiff was found to have decreased range of motion and pain when lifting above the shoulder with popping, although grip strength was

normal. (AR 384.) On February 17, 2015, Plaintiff reported that he had full range of motion but pain that was emanating from the left shoulder to the elbow and he also complained of right shoulder pain. (AR 402.)

In March 2015, Plaintiff still reported full range of motion, but continued to report the pain emanating to his elbow. (AR 328.) He reported that he was working at Dole Packing House in Atwater. (AR 390.) He also reported that his shoulder was popping and his pain was made worse by movement. (AR 395.) Examination revealed bilateral shoulder pain with extension and abduction. (AR 397.)

An April 6, 2015 MRI of the left shoulder suggested that Plaintiff had anterior and posterior labrum tears. (AR 407.)

The Court finds that review of the record does not support the finding that Plaintiff's left shoulder impairment does not meet the durational requirement. Plaintiff injured his shoulder in August 2013, and while he did have some improvement following his surgery in January 2014, he has generally complained of pain with objective findings of pain. Further the April 6, 2015 MRI of Plaintiff's left shoulder suggested that he has labrum tears.

Plaintiff also argues that the failure to order a consultative examination is reversible error in this case. Defendant argues that it is Plaintiff's burden to establish disability and the ALJ only needs to develop the record where it is ambiguous. Here, Plaintiff's shoulder injury occurred following the initial denial of Plaintiff's application, and the denial on reconsideration. The ALJ found that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels. (AR 14.)

The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011). In this instance, Plaintiff presented evidence to demonstrate that he has a severe shoulder impairment

and the ALJ pointed to no medical evidence opining as to Plaintiff's functional capacity due to this impairment nor does the Court find such evidence in the record. This action shall be remanded for further proceedings for the ALJ to solicit medical opinion addressing Plaintiff's residual functional capacity with his left shoulder impairment.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred in determining that Plaintiff's left shoulder impingement was not severe. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Michael Alan Murray and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **November 7, 2017**

UNITED STATES MAGISTRATE JUDGE